**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| YOHAN JOSE ROMERO, | § | |
|   a/k/a Johan Petrica, | § | |
|   a/k/a El Viejo, | § | |
|   a/k/a Darwin, | § | |
|   a/k/a Darwin Alexander Bello Guevara, | § | Criminal No. 4:25-cr-00030-S2 |
| JOSE ENRIQUE MARTINEZ FLORES, | § | |
|   a/k/a Chuqui, | § | |
| JUAN GABRIEL RIVAS NUNEZ, | § | |
|   a/k/a Juancho, | § | |
|   a/k/a Wilson Stalyn Aponte Rodriguez, | § | |
| GIOVANNI VICENTE MOSQUERA SERRANO, | § | |
|   a/k/a Jhovanni San Vicente, | § | |
|   a/k/a El Viejo Viejo, | § | |
| | § | |
|         Defendants. | § | |
| _____ | § | |

**SEALED SECOND
SUPERSEDING INDICTMENT**

THE GRAND JURY CHARGES:

**INTRODUCTION**

At all times relevant to this Second Superseding Indictment:

**Tren de Aragua ("TdA")**

1.      Tren de Aragua ("TdA") is a violent transnational criminal organization that originated as a prison gang in Venezuela in the mid-2000s. TdA has expanded its criminal network throughout the Western Hemisphere and established a presence in the United States, including Colorado, Florida, Illinois, New Mexico, New York, Nebraska, Oregon, Texas, Utah, and Washington, as well as internationally in Venezuela, Colombia, Peru, Chile, Brazil, Mexico and Spain. As a result, TdA operated as a national and international criminal organization with its members and associates regularly conducting gang activities and acts of terrorism across the Western Hemisphere.

2.      TdA—literally meaning "Train from Aragua"—originated in the Venezuelan state of Aragua in the 2000s, and TdA used the Tocorón Prison in Aragua as a center of operations to orchestrate and conduct criminal activities.  TdA was largely composed of persons from South America, mostly from Venezuela.  In the following years, gang members and associates left Venezuela and spread throughout North, South, and Central America, and other places, which expanded TdA's presence.

3.      TdA members and associates established a presence in other countries in South America, Central America, and the United States by engaging in the following pattern of behavior:  First, TdA members and associates infiltrated other countries by illegally crossing their borders and finding cities and residential neighborhoods where they could easily establish control over civilian immigrant populations.  Next, TdA members and associates committed crimes and other acts of terrorism to assert control over their territory and enrich themselves through extortions, kidnappings, robberies, murders, drug trafficking, prostitution, sex trafficking, and trafficking of firearms, grenades, ammunition, and gold.

4.      YOHAN JOSE ROMERO, a/k/a "Johan Petrica," a/k/a "El Viejo," a/k/a "Darwin," a/k/a "Darwin Alexander Bello Guevara" ("JOSE ROMERO") has been an original founder, leader and member of TdA and participated in unlawful and other activities in furtherance of TdA's affairs.  For years and up to the present, JOSE ROMERO has exercised leadership over TdA, as one with authority over TdA's expansion across the Western Hemisphere.  During a substantial portion of this time, JOSE ROMERO operated from Tocorón Prison, where the Venezuelan government allowed him to control the day-to-day operations of that prison.

5.      Under the authority of  JOSE ROMERO TdA members and associates engaged in a wide range of crimes, including extortions, kidnappings, murders, drug trafficking, gun trafficking, prostitution, sex trafficking, robberies, bank burglaries, and money laundering. JOSE ROMERO, and other high-level leaders of TdA, charge and collect a "causa" or fee for

TdA from lower-level members of TdA and from individuals to work in their area of control. These payments enrich TdA leadership and provide financial support to TdA. Individuals who did not pay the "causa" would be threatened, beaten, or murdered by TdA members.

6. As a leader of TdA operating and managing from Venezuela, JOSE ROMERO, has ordered, directed, facilitated, and supported acts of violence and terrorism, including murders, kidnappings, extortions, and maiming against victims located inside and outside the United States, including against those who have not or do not pay the "causa."

7. Many of the crimes and acts of terrorism committed by TdA members and associates were ordered, directed, facilitated, or otherwise supported by TDA leadership in South America, including JOSE ROMERO. TdA members and associates have spread to other locations, forming cells with their own local leadership and structure. TdA's violent tactics have resulted in neighborhoods, including apartment complexes, in the United States and elsewhere being subject to TdA's control. TdA members and associates laundered the proceeds of their criminal activities and transmitted a portion of the proceeds to TdA leadership in South America, including JOSE ROMERO.

8. TdA's criminal activities include human smuggling and other illicit acts that target migrants. TdA has developed additional revenue sources through other criminal activities, such as illegal gold mining, drug trafficking, firearms trafficking, sex trafficking, kidnapping, robbery, theft, fraud, and extortion. TdA members also commit murder, assault, and other acts of violence to enforce and further TdA's criminal activities. TdA has formed ties with other transnational criminal organizations operating in the Western Hemisphere and, at times, has been willing to collaborate with other criminal groups and organizations, transnational or otherwise, on a local and ad hoc basis.

9. JOSE ROMERO, through his subordinates, controls and operates the gold mines in Las Claritas, Venezuela, an area also referred to as Kilómetro 88. JOSE ROMERO through his TdA subordinates, used the revenue from the sale of gold from those mines to enrich himself and

TdA members, and to resource TdA criminal activities, including, the unlawful smuggling of gold to the United States, including the Southern District of Texas, and elsewhere. No decision as to the distribution of gold from Las Claritas/Kilómetro 88 was done without the approval of JOSE ROMERO. JOSE ROMERO through his subordinates, used the Venezuelan military to assist with the transport of gold from Las Claritas/ Kilómetro 88 mines to ports for distribution out of Venezuela, which, in turn, materially supported TdA.

10. In the United States TdA was organized by geographic area of operation into subsets, or cells. Each regional cell typically had one or more leaders who were responsible for, among other things, managing the criminal enterprise's activities in the territory, collecting money from other members and associates to finance activities and crimes, directing day to day management of the region, planning and ordering acts of violence against rival gang members, associates, and other victims. The leaders of these subsets or cells reported to, received directives from, and distributed assets and drug proceeds to TdA leaders throughout the United States, Mexico, and other countries in Central and South America.

11. On February 20, 2025, the United States Secretary of State designated TdA as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act. On February 20, 2025, the Secretary of State also designated Tren de Aragua as a Specially Designated Global Terrorist under Executive Order 13224. On July 11, 2024, TdA was designated by U.S. Department of the Treasury as a transnational criminal organization under Executive Order 13581. The Secretary of State has also listed "Aragua Train" as an alias for TdA.

12. GIOVANNI VICENTE MOSQUERA SERRANO, a/k/a "Jhovanni San Vicente," a/k/a "El Viejo Viejo," was and has been a leader of TdA who oversaw TdA criminal operations across Colombia, South America, Central America, and the United States. GIOVANNI VICENTE MOSQUERA SERRANO, a/k/a "Jhovanni San Vicente," a/k/a "El Viejo Viejo," was involved in, among other criminal activity, drug trafficking, extortion, prostitution and robbery.

13.    JUAN GABRIEL RIVAS NUNEZ, a/k/a Juancho, was a leader of TdA who oversaw the TdA criminal operations in Venezuela. NUNEZ was involved in, among other criminal activity, the illegal importation of gold into the United States, extortion, prostitution and murder.

14.    JOSE ENRIQUE MARTINEZ FLORES, a/k/a Chuqui, was a TdA leader overseeing criminal activities in Colombia such as drug trafficking, extortion, prostitution and murder.

## COUNT ONE
(Conspiracy to Provide Material Support to a Foreign Terrorist Organization)

15.    The allegations in paragraphs 1-14 are incorporated by reference as if set forth fully herein.

16.    From on or about February 20, 2025, and continuing thereafter until the return of this Second Superseding Indictment, in the Southern District of Texas and elsewhere, including the countries of Colombia and Venezuela and within the extraterritorial jurisdiction of the United States of America, the defendants,

YOHAN JOSE ROMERO,
a/k/a Johan Petrica,
a/k/a El Viejo,
a/k/a Darwin,
a/k/a Darwin Alexander Bello Guevara,
JOSE ENRIQUE MARTINEZ FLORES,
a/k/a Chuqui,
JUAN GABRIEL RIVAS NUNEZ,
a/k/a Juancho,
a/k/a Wilson Stalyn Aponte Rodriguez,
and
GIOVANNI VICENTE MOSQUERA SERRANO,
a/k/a Jhovanni San Vicente,
a/k/a El Viejo Viejo,

with others known and unknown to the Grand Jury did conspire to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), namely, personnel (including themselves) and services, to a foreign terrorist organization namely, TdA,

which at all relevant times was designated by the United States Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, knowing that TdA was a designated foreign terrorist organization, and that TdA has engaged in terrorist activity, and that TdA has engaged in terrorism.

In violation of Title 18, United States Code, Section 2339B.

## COUNT TWO
(International Cocaine Distribution Conspiracy)

17. Beginning in May 2024, the exact date being unknown to the Grand Jury, and continuing thereafter until the return of this Second Superseding Indictment, in the Southern District of Texas, and elsewhere including the countries of Colombia and Venezuela, and within the extraterritorial jurisdiction of the United States of America, the defendants,

JOSE ENRIQUE MARTINEZ FLORES,
a/k/a Chuqui,
and
GIOVANNI VICENTE MOSQUERA SERRANO,
a/k/a Jhovanni San Vicente,
a/k/a El Viejo Viejo,

did knowingly and intentionally conspire and agree together and with other persons known and unknown to the Grand Jury to manufacture and distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States of America.

In violation of Title 21, United States Code, Sections 963, 959(a), 960(a)(3), and 960 (b)(1)(B).

## COUNT THREE
(International Cocaine Distribution)

18. On or about November 6, 2024, in the Southern District of Texas and elsewhere, including the country of Colombia and within the extraterritorial jurisdiction of the United States of America, the defendants

JOSE ENRIQUE MARTINEZ FLORES,
a/k/a Chuqui,
and
GIOVANNI VICENTE MOSQUERA SERRANO,
a/k/a Jhovanni San Vicente,
a/k/a El Viejo Viejo,

did knowingly and intentionally manufacture and distribute a controlled substance, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States of America. The controlled substance involved was more than five (5) kilograms, that is, approximately ten (10) kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(B), and Title 18, United States Code, Section 2.

## COUNT FOUR
(Providing and Attempting to Provide Material Support to a Foreign Terrorist Organization)

19.     From on or about March 5, 2025, and continuing thereafter until the return of this Second Superseding Indictment, in the Southern District of Texas and elsewhere, including the countries of Colombia and Venezuela and within the extraterritorial jurisdiction of the United States of America, the defendants,

JOSE ENRIQUE MARTINEZ FLORES,
a/k/a Chuqui,
and
GIOVANNI VICENTE MOSQUERA SERRANO,
a/k/a Jhovanni San Vicente,
a/k/a El Viejo Viejo,

did provide and attempt to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), namely, personnel (including themselves) and services, to a foreign terrorist organization, namely, TdA, which at all relevant times was designated by the United States Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, knowing that TdA was a designated foreign terrorist

organization, and that TdA has engaged in terrorist activity, and that TdA has engaged in terrorism.

In violation of Title 18, United States Code, Sections 2339B and 2.

## COUNT FIVE
(International Cocaine Distribution)

20. On or about March 5, 2025, in the Southern District of Texas and elsewhere including the countries of Colombia and Venezuela and within the extraterritorial jurisdiction of the United States of America, the defendants

JOSE ENRIQUE MARTINEZ FLORES,
a/k/a Chuqui,
and
GIOVANNI VICENTE MOSQUERA SERRANO,
a/k/a Jhovanni San Vicente,
a/k/a El Viejo Viejo,

did knowingly and intentionally manufacture and distribute a controlled substance, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States of America. The controlled substance involved was more than five (5) kilograms, that is, approximately fourteen (14) kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(B), and Title 18, United States Code, Section 2.

## COUNT SIX
(Providing and Attempting to Provide Material Support to a Foreign Terrorist Organization)

21. From on or about September 11, 2025, and continuing thereafter until the return of this Second Superseding Indictment, in the Southern District of Texas and elsewhere, including the countries of Colombia and Venezuela and within the extraterritorial jurisdiction of the United States of America, the defendants,

YOHAN JOSE ROMERO,
a/k/a Johan Petrica,
a/k/a El Viejo Viejo,
a/k/a Darwin,

a/k/a Darwin Alexander Bello Guevara,
and
JUAN GABRIEL RIVAS NUNEZ,
a/k/a Juancho,

a/k/a Wilson Stalyn Aponte Rodriguez,

did provide and attempt to provide "material support or resources," as that term is defined in Title

18, United States Code, Section 2339A(b), namely, personnel (including themselves) and services,

to a foreign terrorist organization; namely, TdA, which at all relevant times was designated by the

United States Secretary of State as a foreign terrorist organization pursuant to Section 219 of the

Immigration and Nationality Act, knowing that TdA was a designated foreign terrorist

organization, and that TdA engages and has engaged in terrorist activity, and that TdA engages

and has engaged in terrorism.

In violation of Title 18, United States Code, Sections 2339B and 2.

### NOTICE OF CRIMINAL FORFEITURE
**[18 U.S.C. § 981(a)(1)(C) and (G); 28 U.S.C. § 2461(c)]**

22. The allegations contained in Counts 1 through 21 of this Second Superseding Indictment

are hereby re-alleged an incorporated by reference for the purpose of alleging forfeiture.

23. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and (G) and 28 U.S.C.

Section 2461(c), as a result of the commission of violations of Title 18, United States Code, Section

2339B, as alleged in Counts One, Four, and Six of this Second Superseding Indictment, notice is given

to the defendants,

YOHAN JOSE ROMERO,
a/k/a Johan Petrica,
a/k/a El Viejo,
a/k/a Darwin,
a/k/a Darwin Alexander Bello Guevara,
JOSE ENRIQUE MARTINEZ FLORES,
a/k/a Chuqui,
JUAN GABRIEL RIVAS NUNEZ,
a/k/a Juancho,
a/k/a Wilson Stalyn Aponte Rodriguez,
and
GIOVANNI VICENTE MOSQUERA SERRANO,
a/k/a Jhovanni San Vicente,

a/k/a El Viejo Viejo,

that the defendants shall forfeit to the United States: (1) any property, real or personal, which constitutes or is derived from proceeds traceable to a violation; (2) all assets, foreign or domestic (i) of any individual, entity, or organization engaged in planning or perpetrating any Federal crime of terrorism against the United States or United States citizens or property and all assets affording any person a source of influence over any such entity or organization; (ii) acquired or maintained by any person with the intent and for the purpose of supporting, planning, conducting, or concealing any Federal crime of terrorism against the United States or United States citizens or property; (iii) derived from, involved in, or used or intended to be used to commit any Federal crime of terrorism against the United States or United States citizens or property; and (iv) of any individual, entity, or organization engaged in planning or perpetrating any act of international terrorism against any international organization or against any foreign government.

### NOTICE OF CRIMINAL FORFEITURE
**[21 U.S.C. § 853(a)]**

24. The allegations contained in Counts 1 through 21 of this Second Superseding Indictment are hereby re-alleged an incorporated by reference for the purpose of alleging forfeiture.

25. Pursuant to Title 21, United States Code, Section 853, as a result of the commission of violations of Title 21, United States Code, Sections 963, 959, and 960, as alleged in Counts Two, Three, and Five of this Second Superseding Indictment, notice is given to the defendants,

YOHAN JOSE ROMERO,
a/k/a Johan Petrica,
a/k/a El Viejo,
a/k/a Darwin,
a/k/a Darwin Alexander Bello Guevara,
JOSE ENRIQUE MARTINEZ FLORES,
a/k/a Chuqui,
JUAN GABRIEL RIVAS NUNEZ,
a/k/a Juancho,
a/k/a Wilson Stalyn Aponte Rodriguez,
and

GIOVANNI VICENTE MOSQUERA SERRANO,

a/k/a Jhovanni San Vicente,

a/k/a El Viejo Viejo,

that the defendants shall forfeit to the United States: (1) any property, real or personal, constituting,

or derived from, any proceeds obtained, directly or indirectly, as the result of such offense; and

(2) any property, real or personal, used, or intended to be used, in any manner or part, to commit,

or to facilitate the commission of, the offense.

## **MONEY JUDGMENT**

26.     Defendants are notified that upon conviction, a money judgment may be imposed

equal to the total value of the property subject to forfeiture for which the defendants may be jointly

and severally liable.

## **SUBSTITUTE ASSETS**

27.     Defendants are notified that, in the event that the property that is subject to forfeiture, as

a result of any act or omission of any defendant:

A.   cannot be located upon exercise of due diligence;

B.   has been transferred or sold to, or deposited with, a third party;

C.   has been placed beyond the jurisdiction of the Court;

D.   has been substantially diminished in value; or,

E.   has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendant up to

the value of such property, pursuant to Title 21, United States Code, Section 853(p), incorporated

by reference in Title 28, United States Code, Section 2461(c).

A TRUE BILL

Original Signature on File

FOREPERSON

NICHOLAS J. GANJEI
UNITED STATES ATTORNEY

*Anibal J. Alaniz*

Anibal J. Alaniz
Assistant United States Attorney

*Casey N. MacDonald*

Casey N. MacDonald
Assistant United States Attorney

*James E. Keller*

James E. Keller
Joint Task Force Vulcan
U.S. Department of Justice

*Kelly McGann*

Kelly McGann
Joint Task Force Vulcan
U.S. Department of Justice